

**DeNittis | Osefchen | Prince**, P.C.
Attorneys at Law

denittislaw.com

5 Greentree Centre
525 Route 73 North, Suite 410
Marlton, NJ 08053
P: 856.797.9951 | F: 856.797.9978

1515 Market Street, Suite 1200
Philadelphia, PA 19102
P: 215.564.1721 | F: 215.564.1769

315 Madison Ave, 3rd Floor
New York, NY 10017
P: 646.979.3642

March 20, 2020

**Via ECF**
The Honorable Renee M. Bumb, U.S.D.J.
United States District Court
District of New Jersey
Mitchell H. Cohen Courthouse
4th & Cooper Streets
Camden, New Jersey 08101

**RE: Cirpriani & Werner, P.C. v. Medical records Online, Inc.
Civil Action No. 1:20-cv-2817-RMB-KMW**

Dear Judge Bumb:

      We represent Plaintiff in the above-captioned case. Pursuant to Section I.A. of Your Honor's Individual Rules & Procedures, Plaintiff submits this letter requesting a pre-motion conference on their anticipated motion to remand and setting forth the grounds for that motion.

      This matter is a proposed class action, raising New Jersey state law claims exclusively brought on behalf of a proposed class composed of the persons and entities defined in N.J.A.C. 8:43G-15.3(e) who purchased copies of electronically stored New Jersey hospital records from MRO between September 1, 2015 and February 29, 2020.[1] As outlined in greater detail in the class complaint, N.J.A.C. 8:43G-15.3(e) previously set a legal cap on the fees which could be charged for copies of New Jersey hospital records sold to persons and entities who were not the patient, the patient's attorney, or the patient's legal representative, limiting such fees to the record provider's **"actual costs."** In practice, the proposed class consists of defense lawyers and insurance companies who, in the process of defending civil lawsuits, obtained a written authorization from the plaintiff, allowing the defense attorney or insurance company to purchase

---

[1] As outlined in the class complaint, the fee limits set forth in N.J.A.C. 8:43G-15.3 were superseded by a new statute which took effect on March 1, 2020. That new statute eliminates "actual costs" as a limitation in hospital record copy fees in New Jersey. Thus, the damages of the proposed class were capped on March 1, 2020 and are no longer accruing.



Stephen P. DeNittis*† | Joseph A. Osefchen | Shane T. Prince* | Ross H. Schmierer** | Joseph A. D'Aversa | Charles J. Galvin*

*Member of the NJ & PA Bar    **Member of the NJ & NY Bar    †Certified Civil Trial Attorney by the Supreme Court of New Jersey

March 20, 2020Pg.| 2

copies of the patient's New Jersey hospital records from Defendant MRO. The gravamen of the class complaint is that, during the class period, defendant MRO charged the proposed class more for electronic copies of New Jersey hospital records than N.J.A.C. 8:43G-15.3(e) allowed, particularly in light of a written New Jersey Department of Health (NJ DOH) interpretation on the fees allowed under N.J.A.C. 8:43G-15.3(e) for electronic copies of New Jersey hospital records, as set forth in the September 2015 NJ DOH memo entitled **"Fees for Copies of Electronic Medical Records"** (Attachment B to the Class Complaint)(setting forth the NJ DOH interpretation of the **"actual cost"** limitation in N.J.A.C. 8:43G-15.3(e) to permit a fee for electronic medical records---"EMR"---consisting of a $10 search fee, the cost of portable media such as a CD or flash drive and the actual cost of postage).

Plaintiff filed the class complaint in New Jersey state court because there is no federal subject matter jurisdiction over that complaint. Plaintiff brings claims exclusively under New Jersey law and does not raise any federal claim. Moreover, as the class complaint itself makes clear, the total amount in controversy is alleged to be far less than $5 million. See Class Complaint at Paragraph 4. **"The New Jersey Superior Court has exclusive subject matter jurisdiction over the claims alleged herein in that all claims pleaded are New Jersey state law claims and the total amount in controversy, including attorney's fees, is far less than $5 million."**

On March 13, 2020, however, Defendant MRO removed this case to federal court pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332, asserting that federal jurisdiction exists because there is minimal diversity and the total amount in controversy is greater than $5 million. Plaintiff now seeks to remand this case to state court on the grounds that, under binding 3rd Circuit precedent, where a proposed class action complaint pleads that the amount in controversy is less than $5 million, the removing party bears the burden of proving by a preponderance of the evidence that the likely amount in controversy is more than $5 million. See Judon v. Travelers Prop. Cas. Co. of Am., 773 F.3d 495, 500-502 (3d Cir. 2014); Frederico v. Home Depot, 507 F.3d 188, 193 (3d Cir. 2007) **("It is now settled in this Court that the party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court.")** See also Morgan v. Gay, 471 F.3d 469, 473 (3d Cir. 2006) **("Under CAFA, the party seeking to remove the case to federal court bears the burden to establish that the amount in controversy is satisfied.")**.

Defendant MRO has not met this burden in the case at bar. Nor can it meet that burden.[2] Indeed, MRO's removal petition does not even allege that the total amount of fees charged to the proposed class for electronic copies of New Jersey hospital records between September 1, 2015 and March 1, 2020 is high enough to generate an amount in controversy anywhere near $5 million. Instead, MRO's removal petition attempts to dazzle the Court with irrelevant figures about how many millions of dollars MRO collects in copy fees across the country in the many other states in which MRO operates. It does not matter one iota if that number is over $5 million

---

[2] Discovery from a companion matter Console & Associates v. MRO, pending in New Jersey Court for a class of plaintiffs' attorneys, reveals damages to be well under $1,000,000 for this matter.

March 20, 2020Pg.| 3

because this case is solely about medical requests performed in New Jersey, not nationwide which MRO's conclusory statements to meet the $5 million threshold represent. The proposed class is composed only of those persons who purchased electronic copies (ie not paper copies) of New Jersey hospital records (ie not records from facilities outside New Jersey or records created by doctors' offices or other facilities which are not New Jersey hospitals), between September 1, 2015 and March 1, 2020, with patients, patients' attorneys and legal representatives of the patients being expressly excluded from the class definition. See Class Complaint at Paragraphs 124-125. MRO's removal petition admits that MRO has not even calculated the total fees paid by the proposed class to MRO for the copies described in the complaint during the limited class period. Nor does MRO's removal petition offer one scintilla of proof that this amount exceeds even $300,000.[3] Even with treble damages[4] and a generous award of attorneys fees, MRO has not come anywhere near meeting its burden of showing with evidence that likely total amount in controversy is anywhere near $5 million. See e,g, Opinion of Judge Hillman dated September 5, 2018 in Kasher Law Group, LLC v. Ciox Health, LLC, United States District Court, District of New Jersey, 1:18-cv-01821 (NLH-AMD)(Exhibit A hereto), remanding the matter due to the failure of the defendant medical record copy company to prove by a preponderance of the evidence that the $5 million CAFA requirement was met where the removing defendant tried to expand the alleged damages and class beyond the more limited class of purchasers of electronic New Jersey hospital records pleaded in the complaint.[5]

Based on the foregoing, Plaintiff respectfully request permission to move to remand this case to New Jersey state court.

Respectfully submitted,

STEPHEN P. DeNITTIS

SPD/dmc

cc: Lisa J. Rodriquez, Esq.(via ECF and Email)

---

[3] Moreover, the total fees paid by the class for the copies at issue is not the correct measure of damages, since the class complaint concedes that MRO was lawfully allowed to charge some fees for the records at issue. See Class Complaint at Paragraph 52. Thus, the recoverable damages suffered by the class are less than the total fees charged to the class by MRO for electronic copies of New Jersey hospital records between September 1, 2020 and March 1, 2020.

[4] MRO's contention in the removal petition that treble damages under New Jersey Consumer Fraud Act somehow permits a plaintiff to recover five times the amount of actual damages requires little discussion. The plain text of the Consumer Fraud Act makes clear that the Act provides only for "*threefold* **the damages sustained by any person in interest**" not five times as incorrectly represented by Defendant N.J. Stat. § 56:8-19

[5] Plaintiff's counsel understand that this is a pre-motion letter and not the motion itself, but the Ciox remand motion granted by Judge Hillman involves facts and law that are nearly identical with Defendant's competitor Ciox, involving the same regulation limiting fees for copies of electronic hospital records, the same type of claims, the same CAFA "amount in controversy" issues and a removal petition that is extremely similar to the type filed by MRO in the case at bar.

# Exhibit A

Cited
As of: March 20, 2020 2:22 PM Z

## *Kasher Law Grp., LLC v. Ciox Health, LLC*

United States District Court for the District of New Jersey

September 5, 2018, Decided; September 5, 2018, Filed

1:18-cv-01821-NLH-AMD

**Reporter**
2018 U.S. Dist. LEXIS 150497 *; 2018 WL 4215004

KASHER LAW GROUP, LLC, on behalf of itself and all others similarly situated, Plaintiff, v. CIOX HEALTH, LLC, Defendant.

## Core Terms

medical record, patients, damages, electronic, copies, punitive damages, charges, costs, amount in controversy, actual cost, subject matter jurisdiction, healthcare provider, class action, legally authorized, class member, allegations, postage, removal, treble, calculation, overcharges, estimation, contends, pages, preponderance of evidence, attorney's fees, state court, designated, requests, invoice

**Counsel:** [*1] For Plaintiff: STEPHEN PATRICK DENITTIS, JOSEPH A. OSEFCHEN, DENITTIS OSEFCHEN, P.C., MARLTON, NJ.

For Defendant: REBECCA BRAZZANO, THOMPSON HINE LLP, NEW YORK, NY.

**Judges:** NOEL L. HILLMAN, United States District Judge.

**Opinion by:** NOEL L. HILLMAN

## Opinion

**HILLMAN**, District Judge

This putative class action, originally filed in state court and removed by Defendants to this Court, concerns Plaintiff's allegations that Defendant committed fraud and acted in bad faith by overcharging for electronic copies of patients' medical records. Pending before the Court is Plaintiff's motion to remand.

Ordinarily, one would expect a plaintiff to take an expansive view of a potential claim for money damages, the most common claim for relief in a civil action. Similarly, a defendant would seek, as early as possible, to limit such claims. An interesting dynamic arises when a plaintiff, who originally chose a state forum, has their case removed to federal court based on a claim that jurisdiction exists either under the general diversity statute or the Class Action Fairness Act ("CAFA").

For the plaintiff who wishes to stay in state court, the dynamic reverses with the plaintiff arguing the narrowness of the claim for damages and the defendant [*2] arguing for the more expansive view. This is one of those cases. Finding that the claims of the putative class do not exceed the statutory minimum for subject matter jurisdiction under CAFA, the Court will grant Plaintiff's motion for remand.

### BACKGROUND AND DISCUSSION

Plaintiff, Kasher Law Group, LLC, is a law firm that requested hospital medical records for its client from Our Lady of Lourdes Hospital in Camden, New Jersey. Defendant, Ciox Health, LLC, is an information management company that, among other things, contracts with hospitals, including Our Lady of Lourdes Hospital, to provide copies of patients' medical records at their request. According to Plaintiff's complaint, Defendant charged $161.90 for 261 pages of its client's medical records, which were electronically downloaded onto a CD and mailed to Plaintiff. Plaintiff represents that the breakdown of charges was: $10.00 Basic Fee; $100.00 for 100 pages of records at a per copy (paper)

price of $1.00; $40.25 for 161 pages of records at per page copy (paper) price of $.25 per page; and a shipping fee of $11.65.

Plaintiff claims that Defendant's fees for electronic production are not based on its actual costs, and are higher [*3] than the limits imposed by *N.J.A.C. § 8:43G-15.3(d)*, which permits only a $10.00 search fee, the actual cost of the portable media (e.g., CD), and the actual cost of postage, as determined by the New Jersey Department of Health.[1] Plaintiff seeks a declaratory judgment that Defendant's violation of this provision constitutes an unconscionable business practice, and violates the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et seq. Plaintiff also claims that Defendant breached the covenant of good faith and fair dealing by overcharging for electronic medical records and adds a claim for unjust enrichment.

Plaintiff has proposed the following class:
> All patients who are New Jersey citizens, or persons designated by such patients to receive copies of their medical records:
> A) who, between December 11, 2011 and the present, received an invoice from Ciox for electronic copies of patient medical records produced on a CD or via internet download, which were created by a New Jersey health care provider; and
> B) who paid that Ciox invoice; and
> C) excluding from the class Ciox and DeNittis Osefchen Prince, P.C., and any employees, officers or owners of either CIOX or DeNittis Osefchen Prince, P.C.

(Compl. ¶ 52, Docket No. 1-2 at 11). Plaintiff [*4] alleges that each class member has incurred less than $210 in out-of-pocket damages.

Defendant removed Plaintiff's case from New Jersey Superior Court, Camden County, to this Court, contending that this Court has jurisdiction over the matter pursuant CAFA, *28 U.S.C. § 1332(d)(2)*. CAFA provides, in relevant part, that "district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . . (A) any member of a class of plaintiffs is a citizen of a State different from any defendant." *28 U.S.C. § 1332(d)(2)*. Another jurisdictional requirement under CAFA is that the proposed class contains at least 100 members. Id. *§ 1332(d)(6)*.

In its notice of removal, Defendant contends that all three elements for CAFA jurisdiction are met. Specifically with regard to the amount in controversy, Defendant contends that Plaintiff's proposed class encompasses more than 50,000 potential class members. At $100 in damages per class member ($110 less than proposed by Plaintiff), along with treble and punitive damages and attorney's fees, all of which are available to Plaintiff for its claims and requested in the complaint, [*5] the $5 million amount in controversy threshold is easily met.

Plaintiff has moved to remand its case to state court. In Plaintiff's motion to remand, it does not dispute that this matter meets the citizenship and numerosity requirements of CAFA.[2] Plaintiff argues, however, that Defendant has not demonstrated that the class claims will exceed $5 million and contends its case should be remanded for lack of subject matter jurisdiction.

Under *28 U.S.C. § 1446(a)*, a defendant seeking to remove a case to a federal court must file in the federal forum a notice of removal "containing a short and plain statement of the grounds for removal." "When a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 553, 190 L. Ed. 2d 495 (2014)*. Evidence establishing the amount is only required by *§ 1446(c)(2)(B)* when the plaintiff contests, or the court questions, the defendant's allegation. Id. If the plaintiff contests the defendant's allegation, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id. at 553-54*.

Here, Plaintiff's complaint specifically states that [*6] the total amount in controversy for its claims, including attorney's fees, is less than $5 million. It is a plaintiff's right to limit the value of its claim to prevent its case from being removed from its choice of forum, see *Frederico v. Home Depot, 507 F.3d 188, 195 (3d Cir. 2007)* (explaining that it is "well-established" that "the plaintiff is the master of her own claim

---

[1] As noted below, see *infra* note 4, *N.J.A.C. § 8:43G-15.3(d)* only appears to address requests for copies of medical records produced on paper. According to Plaintiff's complaint, in September 2015, the New Jersey Department of Health issued a memorandum to answer inquiries regarding charges for the electronic production of medical records. (Docket No. 1-2 at 23.) The memorandum provides that when producing medical records electronically, a hospital may only charge a $10.00 search fee, the actual cost of the portable media, and the actual cost of postage. (Id.) Plaintiff alleges that Defendant charges the rates for paper production when it provides medical records electronically.

[2] Plaintiff is a citizen of Pennsylvania. Defendant is a citizen of Delaware and Georgia. (Docket No. 7.)

Case 1:20-cv-02817-RMB-KMW   Document 7   Filed 03/20/20   Page 7 of 11 PageID: 89

Page 3 of 7
2018 U.S. Dist. LEXIS 150497, *6

and thus may limit his claims to avoid federal subject matter jurisdiction"), but federal court is a forum available to a defendant despite a plaintiff's choice, as long as the defendant has provided in its notice of removal a "short and plain statement" that the jurisdictional requirements of CAFA are met, and if challenged by the plaintiff, has demonstrated that the CAFA requirements are met by the preponderance of the evidence. See *Owens, 135 S. Ct. at 554* ("[N]o antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court.").

Defendant's notice of removal invoked CAFA jurisdiction by explaining, based on Plaintiff's description of the class, that over 50,000 New Jersey citizens or their designees paid for electronic medical records from a New Jersey health care provider between December 11, 2011 to the present. [*7] The notice also asserted that with $210 (or even $100) in actual damages per class member, along with the demanded treble and punitive damages and attorney's fees, the amount in controversy exceeds $5 million. This "short and plain statement" is sufficient to establish a *prima facie* basis for subject matter jurisdiction under CAFA at the time of removal. Plaintiff, however, has challenged Defendant's calculation of the amount in controversy, and the Court must now consider whether the preponderance of the evidence supports Defendant's assertion of jurisdiction.

Plaintiff argues that its proposed class is much narrower than Defendant's definition: it is only New Jersey patients or their legal representatives, not any person or entity that has made a medical records request; it is only electronic record requests made to hospitals, not any request to all other types of providers; and it is only people who have paid a Ciox invoice, not an invoice issued by Ciox's former corporate form, which limits the class to less than a two-year time period (March 1, 2016 to December 11, 2017).[3] Based on this narrow class, Plaintiff argues that Defendant's estimation of class size and resulting amount [*8] in controversy is a self-serving "pie in the sky" estimate.

In response, Defendant points out that Plaintiff cannot amend its complaint to defeat jurisdiction through its motion to remand. Defendant argues that its estimation of damages is plausible because unlike the class Plaintiff attempts to redefine in its motion to remand, Plaintiff's class definition provides for: New Jersey patients "or persons designated by such patients," and not their "legal representatives"; medical records created by a "New Jersey health care provider," and not just a hospital; and a time period of December 11, 2011 to present (Plaintiff filed its complaint on December 11, 2017), which encompasses both Ciox and its former entity. Defendant supports its estimation of class size based on these parameters with a declaration of Ciox's Senior Vice-President of Operations for the Northern Zone, Amy Creswell. (Docket No. 17-1.)

Defendant further argues that even if Plaintiff's redefined class is considered, the jurisdictional amount in controversy is still met. Defendant states that between March 1, 2016 and December 11, 2017, it electronically delivered medical records from hospitals to New Jersey patients or [*9] their authorized representatives 18,523 times, for which Defendant earned $1,267,453.00 in total revenue. (Docket No. 17-1 at 3.) Defendant calculates:

> [W]ith a Class of 18,523 members, the full refund amount is $1,267,453 (Creswell Decl. ¶ 14) and the actual damages suffered (full refund ($1,267,453) - ($20 x 18,523)) is $896,993, which is $2,690,979 when trebled. Adding the total full refund and actual damages amounts is an aggregate of $3,958,432 alleged damages for the CFA claim. When the Class's actual damages and potential punitive damages for the Class's breach of contract claim are added, the aggregate for this claim is $5,381,958 in potential damages. The potential damages for the CFA and breach of contract claims, even with the limited Class as reconstituted by Plaintiff is well over $5 million (without accounting for the additional 30% of attorney's fees or the value of Plaintiff's claim for injunctive relief).

(Docket No. 17 at 17 n.7.)

Plaintiff rejects Defendant's position that its complaint pleads a broader class as defined by Defendant. Plaintiff also finds fault with Defendant's calculation of the amount in controversy based on what Defendant calls the "reconstituted [*10] class," but what Plaintiff contends is the class as actually pleaded. Plaintiff points out that Defendant was legally entitled to charge a $10 search fee, in addition to its labor costs, postage, and the cost of the CD, which Plaintiff's complaint alleges to be $20 for each class member. Thus, Plaintiff contends that Defendant was lawfully entitled to charge $30 per person, totaling $555,690 for the 18,523 class members. (Docket No. 19 at 13.) Subtracting the lawful charges from the total revenue to determine the maximum alleged overcharges comes to $711,763.00 ($1,267,453 - $555,690). Trebling this amount of alleged overcharges ($2,135,289), and then adding an additional 50% for attorney's fee and costs ($1,067,644.50), would come to only $3,202,933.50, which is $1,797,066.50 below the $5 million

---

[3] Ciox was formerly known as HealthPort Technologies, LLC, which was established on October 26, 2001. After a merger, HealthPort changed its name to Ciox in March 2016. (Docket No. 17 at 14 and 17-1 at 2.) As noted, Plaintiff filed his state court complaint on December 11, 2017.

jurisdictional threshold. Accordingly, Plaintiff argues that the evidence is clear that the amount in controversy for its proposed class action does not meet the requirements for CAFA jurisdiction.

In order to determine whether the preponderance of the evidence supports CAFA jurisdiction, the first step is determining what the complaint demands as its claims, proposed class, and damages. [*11] See *Judon v. Travelers Property Cas. Co. of America, 773 F.3d 495, 500 (3d Cir. 2014)* ("In order to determine whether the CAFA jurisdictional requirements are satisfied, a court evaluates allegations in the complaint and a defendant's notice of removal.")(citations omitted). Defendant focuses mainly on Plaintiff's definition of its class to support its calculation, while Plaintiff refers to its complaint as a whole to refute Defendant's construction of its claims.

As set forth above, Plaintiff defined its class in paragraph 52 of its complaint as:

> All patients who are New Jersey citizens, or persons designated by such patients to receive copies of their medical records:
>
> A) who, between December 11, 2011 and the present, received an invoice from Ciox for electronic copies of patient medical records produced on a CD or via internet download, which were created by a New Jersey health care provider; and
>
> B) who paid that Ciox invoice; and
>
> C) excluding from the class Ciox and DeNittis Osefchen Prince, P.C., and any employees, officers or owners of either CIOX or DeNittis Osefchen Prince, P.C.

(Compl. ¶ 52, Docket No. 1-2 at 11).

Based on this paragraph alone, the Court would find compelling Defendant's position that the class is not limited to patients and their "legally authorized [*12] representatives," as the class definition provides for "persons designated by such patients," and encompasses more than hospital medical records, as the class definition provides for medical records "created by a New Jersey health care provider." The December 11, 2011 date also plausibly suggests that the class includes medical records provided by Ciox's former corporate form. A court's assessment of a complaint for subject matter jurisdiction must consider the entirety of the complaint, however, as well as other evidence provided to support or refute jurisdiction. *Owens, 135 S. Ct. at 554*.

Plaintiff's complaint begins with this introductory paragraph: "This is a class action, brought under New Jersey law, on behalf of New Jersey citizens and their designated representatives who were charged copy fees by Ciox Health LLC ("Ciox") for electronic copies of medical records, which fees far exceeded the maximum limit allowed by *N.J.A.C. § 8:43G-15.3(d)*." (Compl. ¶ 1, Docket No. 1-2 at 2.) From there, over the course of more than fifty paragraphs, the complaint then details how Ciox, without reference to its predecessors, has violated *N.J.A.C. 8:43G-15.3(d)*, which is a regulation governing Hospital Licensing Standards in New Jersey.[4]

---

[4] *N.J.A.C. 8:43G-15.3* is in Title 8 Health, Chapter 43G Hospital Licensing Standards, Subchapter 15 Medical Records, and provides in relevant part:

(d) If a patient or the patient's legally authorized representative requests, in writing, a copy of his or her medical record, a legible, written copy of the record shall be furnished at a fee based on actual costs. One copy of the medical record from an individual admission shall be provided to the patient or the patient's legally authorized representative within 30 days of the request, in accordance with the following:

> 1. The fee for copying records [*13] shall not exceed $1.00 per page or $100.00 per record for the first 100 pages. For records which contain more than 100 pages, a copying fee of no more than $0.25 per page may be charged for pages in excess of the first 100 pages, up to a maximum of $200.00 for the entire record;
>
> 2. In addition to per page costs, the following charges are permitted:
>
>> i. A search fee of no more than $10.00 per patient per request. (Although the patient may have had more than one admission, and thus more than one record is provided, only one search fee shall be permitted for that request. The search fee is permitted even though no medical record is found as a result of the search.); and
>>
>> ii. A postage charge of actual costs for mailing. No charges shall be assessed other than those permitted in (d)1 and 2 above;
>
> 3. The hospital shall establish a policy assuring access to copies of medical records for patients who do not have the ability to pay; and
>
> 4. The hospital shall establish a fee policy providing an incentive for use of abstracts or summaries of medical records. The patient or his or her representative, however, has a right to receive a full or certified copy of the medical record.
>
> 5. For purposes of this [*14] subsection, "legally authorized representative" means the following:
>
>> i. Spouse, domestic partner or civil union partner;
>>
>> ii. Immediate next of kin;
>>
>> iii. Legal guardian;
>>
>> iv. Patient's attorney;
>>
>> v. Patient's third party insurer; and

The complaint explains that "[a]mong the duties that Ciox contractually assumes for its health care provider clients is the duty to respond to requests for copies of patient medical records made by patients and patients' authorized representatives in accordance with, inter alia, *N.J.A.C. § 8:43G-15.3(d)*." (Compl. ¶ 9, Docket No. 1-2 at 4.) The complaint continues:

> 14. Specifically, *N.J.A.C. § 8:43G-15.3(d)* states that "**If a patient or the patient's legally authorized representative requests, in writing, a copy of his or her medical record, a legible, written copy of the record shall be furnished at a fee based on actual costs**." (emphasis added).
>
> 15. This limitation on the fees that may be charged for copies of medical records applies to both the patients themselves and their attorneys. [*15] See *N.J.A.C. § 8:43G-15.3(d)(5)(iv)*, which defines "**legally authorized representative**" to include, inter alia, a "**Patient's attorney**."
>
> 16. Moreover, the fee limits set forth in *N.J.A.C. § 8:43G-15.3(d)* apply to both health care providers and record management and copy companies - such as Ciox - which contract with health care providers to respond to requests for copies of patient medical records. See Attachment A, Opinion Letter by N.J. Dept. of Health dated July 11, 2012, stating: "**The Department would apply the requirements of *N.J.A.C. 8:43G-15.3* to a vendor acting as the agent of a hospital in the provision of medical records to patients**." (emphasis added).
>
> 17. Put simply, *N.J.A.C. § 8:43G-15.3(d)* forbids a records provider from making a profit on the sale of copies of patient medical records to the patient or the patient's designated recipient (though there is no limit imposed on what the copy provider may charge to other requestors who are not patients or their representatives, or to the healthcare providers for such copy services).

(Compl. ¶¶ 14-17, Docket No. 1-2 at 5 (emphasis in original).) Thereafter, the complaint describes how Defendant allegedly violated *N.J.A.C. § 8:43G-15.3(d)*, generally and specifically with regard to Plaintiff.

Thus, it is very clear that the sole basis of Plaintiff's putative [*16] class action against Defendant is for Defendant's alleged violation of *N.J.A.C. § 8:43G-15.3(d)*, an administrative regulation governing hospitals. It is also very clear from the complaint, and the text of the regulation itself, that *N.J.A.C. § 8:43G-15.3(d)* applies to a patient's request, or that patient's "legally authorized representative," for medical records from hospitals, and not, for example, private physician offices. Even though the class definition at paragraph 52 of the complaint uses the terms "persons designated by such patients" and "New Jersey health care provider," it is obvious that those terms are simply synonyms for the language in the regulation. And while Plaintiff could have crafted its class definition using the precise terms of *N.J.A.C. § 8:43G-15.3(d)*, the Court does not find that Plaintiff intended to define its class to include members who were not within the scope of Defendant's alleged violation of *N.J.A.C. § 8:43G-15.3(d)*, or to include class members who have claims for violations beyond Defendant's alleged violation of *N.J.A.C. § 8:43G-15.3(d)*.

Moreover, whether Plaintiff's class definition is sufficient for certification is a different legal analysis than the determination of whether subject matter jurisdiction has been established by the face of Plaintiff's complaint [*17] at the time of removal. See, e.g., *Hoffman v. Nordic Naturals, Inc., 2013 U.S. Dist. LEXIS 201000, 2013 WL 12155833, at *1 (D.N.J. 2013)* (agreeing with the defendants that the issue of whether the complaint would survive class certification with the plaintiff serving as both class representative and class counsel was a separate issue from whether there was CAFA jurisdiction based on the allegations in the complaint, and finding that "the possibilities with respect to class certification are too speculative at this stage to determine with legal certainty that the Court lacks jurisdiction") (citing *Standard Fire Ins. Co. v. Knowles, 568 U.S. 588, 593, 133 S. Ct. 1345, 185 L. Ed. 2d 439 (2013)* (noting that for jurisdictional purposes, the inquiry is limited to examining the case as of the time it was filed in state court, and finding that a plaintiff's precertification stipulation that its damages did not exceed $5 million which only bound the plaintiff and not the class to be immaterial to the CAFA jurisdictional analysis)).

Similarly, even though Ciox did not exist until March 2016, the December 11, 2011 date in the class definition does not override the rest of Plaintiff's complaint, which only asserts claims against Ciox, with no mention of its prior corporate form. The class definition, in addition to the other allegations in the complaint, specifically references Ciox only. [*18] Plaintiff's class term is apparently overly expensive, but, again, that issue more appropriately goes to the class certification process, and not as to whether Plaintiff intended to include claims against a different entity, which would expand its class and expand the amount in controversy. In

---

> vi. Worker's compensation carriers, where access is permitted by contract or law, but limited only to that portion of the medical record which is relevant to the specific work-related incident at issue in the worker's compensation claim.

*N.J.A.C. 8:43G-15.3(d)*.

other words, even though Plaintiff defined a class term of December 11, 2011 to the present (when it filed its complaint in state court on December 11, 2017), because its claims are only against Ciox, and Ciox only came into existence in March 2016, the fact is that Plaintiff's class term can only be, by definition, from March 2016 until December 11, 2017.[5]

Consequently, the Court finds that Plaintiff's complaint alleges a class of members, comprising of New Jersey patients or their legally authorized representatives, to whom Ciox electronically delivered medical records from hospitals between March 1, 2016 and December 11, 2017. According to Defendant's records, that occurred 18,523 times, resulting in $1,267,453 in total revenue. Defendant contends that Plaintiff has demanded that Defendant refund its entire revenue and pay treble damages on that amount, but the complaint instead recognizes that [*19] Defendant is entitled to compensation for its services, as limited by *N.J.A.C. § 8:43G-15.3(d)*. Thus, in order to determine the class's damages, Defendant's permitted costs must be deducted from its total revenue before calculating the overcharges: $1,267,453 - permitted charges x 18,523.

As to the permitted charges, Plaintiff claims that Defendant was entitled to bill $30 in each of the 18,523 instances it provided electronic medical records: a $10 search fee, and $20 for labor costs, postage, and the cost of the CD. Defendant does not specifically contest that estimation, other than to note that it incurs significant labor costs even when it provides medical records electronically,[6] but points out that Plaintiff's estimate of permitted charges contradicts its reliance on the N.J. Department of Health's memorandum, which has interpreted *N.J.A.C. § 8:43G-15.3(d)* to permit a hospital when producing medical records electronically to only charge a $10.00 search fee, the actual cost of the portable media, and the actual cost of postage. (Docket No. 1-2 at 23.) The memorandum does not specifically provide for recovery of a hospital's "labor costs," and Plaintiff does not provide a specific estimate for the cost of the portable media (here, [*20] a CD), or the actual cost of postage.

The evidence before the Court shows that Defendant's allowable charges for the electronic production of hospital medical records are $10 for the search fee and $11.65 for postage, which is what Defendant charged Plaintiff in this case. As for the cost of the CD, even if it is only $.01 when factored into calculation, that cost results in an amount in controversy significantly less than the $5 million threshold for CAFA jurisdiction. Permitted charges ($21.66) x class members (18,523) = $401,208.18. Total revenue ($1,267,453) - permitted charges ($401,208.18) = $866,244.82 in overcharges. Overcharges ($866,244.82) x 3 for treble damages = $2,598,734.46 in class damages. Fifty-percent attorney's fees and costs ($1,299,367.23) + class damages ($2,598,734.46) = $3,898,101.69 for the total amount in controversy.[7] Understanding that a CD or other portable media device most likely costs more than $.01, the increase in permitted costs simply reduces the total class damages, and thus further supports that the amount in controversy is not met in this case. Consequently, because the preponderance of the evidence shows that the total amount in controversy for [*21] Plaintiff's putative class action is less than $5 million, the Court lacks subject matter jurisdiction over Plaintiff's putative class action under CAFA.

## CONCLUSION

Defendant has not proven by the preponderance of the evidence that the amount in controversy exceeds $5 million. Therefore, this Court lacks subject matter jurisdiction

---

[5] Plaintiff explains that the December 11, 2011 date was picked simply to align with the six-year statute of limitations for its claims, and not based on any date regarding when Defendant was established.

[6] Of course, incurring additional labor costs decreases Defendant's profits and therefore diminishes Plaintiff's claim for damages.

[7] Even though in its prayer for relief Plaintiff seeks punitive damages, such damages are not available for its NJCFA claim. The NJCFA's provision for an award of trebled damages serves the punitive penalty under the Act. See *Lettenmaier v. Lube Connection, Inc., 162 N.J. 134, 741 A.2d 591, 593-94 (N.J. 1999)* (citation omitted) (explaining that one purpose of the CFA is "to punish the wrongdoer through the award of treble damages"). Punitive damages are only otherwise available where a plaintiff has pleaded common law fraud, which Plaintiff here has not pleaded. See *Debra F. Fink, D.M.D., MS, PC v. Ricoh Corp., 365 N.J. Super. 520, 839 A.2d 942, 968 (N.J. Super. Ct. Law Div. 2003)* (citing *Gennari v. Weichert Co. Realtors, 148 N.J. 582, 691 A.2d 350 (N.J. 1997)*) (explaining that common law punitive damages or damages under the *New Jersey Punitive Damages Act, N.J.S.A. 2A:15-5.9 to 5.17*, are not expressly provided for by the NJCFA and are only allowed in cases of common law fraud, a cause of action not pleaded by plaintiff's complaint). Similarly, "[w]ith rare exception, punitive damages are not available in an action for a breach of contract, and have been restricted to tort actions." *Buckley v. Trenton Saving Fund Soc., 111 N.J. 355, 544 A.2d 857, 865 (N.J. 1988)* (citations omitted); see also *Kurnik v. Cooper Health System, 2008 N.J. Super. Unpub. LEXIS 2267, 2008 WL 2829963, at *17 (N.J. Super. Ct. App. Div. 2008)* ("We also do not conclude that this case can be transformed into a tort claim merely because plaintiff also pursued a cause of action for breach of [*22] the implied covenant of good faith and fair dealing."); *Nieves v. Lyft, Inc., 2018 U.S. Dist. LEXIS 90423, 2018*

pursuant to *28 U.S.C. § 1332(d)(2)*.[8] Accordingly, Plaintiff's motion for remand must be granted. An appropriate Order will be entered.

Date: September 5, 2018

At Camden, New Jersey

/s/ Noel L. Hillman

NOEL L. HILLMAN, U.S.D.J.

ORDER

For the reasons expressed in the Court's Opinion filed today,

IT IS HEREBY on this 5th day of September, 2018

ORDERED that Plaintiff's motion to remand [9] be, and the same hereby is, GRANTED; and it is further

ORDERED that the Clerk of the Court shall return this matter to the New Jersey Superior Court, Law Division, Camden County.

At Camden, New Jersey

/s/ Noel L. Hillman

NOEL L. HILLMAN, U.S.D.J.

End of Document

---

*WL 2441769, at \*19 (D.N.J. May 31, 2018)* (explaining that unjust enrichment is an alternative claim to a breach of contract claim). Thus, Plaintiff's breach of good faith and fair dealing in the parties' express or implied contract and unjust enrichment claims also do not support any finding of punitive damages, and punitive damages are not factored into the CAFA jurisdictional analysis. To the extent that New Jersey's statue concerning punitive damages could apply, such statue limits punitive damages to five times the compensatory damages, or $350,000, whichever is greater. See *N.J.S.A. 2A:15-5.14(b)* ("No defendant shall be liable for punitive damages . . . in excess of five times the liability of that defendant for compensatory damages or $350,000, whichever is greater."). An imposition of punitive damages of $350,000, added to the calculation, still does not cross the $5 million jurisdictional threshold for CAFA jurisdiction.

[8] Defendant does not contend that any other basis for subject matter jurisdiction exists. Although diversity of citizenship exists, subject matter jurisdiction is lacking under *28 U.S.C. § 1332(a)* because Plaintiff's individual claim does not exceed $75,000. Plaintiff has not pleaded any federal claims, making jurisdiction under *28 U.S.C. § 1331* unavailable.